# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **PARKIS W. WILLIS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:04cv00111 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I will vacate the final decision of the Commissioner denying benefits and remand this case to the Commissioner for further consideration.

*I. Background and Standard of Review*

Plaintiff, Parkis W. Willis, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Willis protectively filed his applications for DIB and SSI on or about December 6, 2002, alleging disability as of June 30, 2001, based on pain in his lower back, right ankle and knees and dizzy spells.[1] (Record, ("R."), at 226-28, 237, 393-95.) Willis's claims were denied both initially and on reconsideration. (R. at 216-20, 221, 222-24, 397-401, 403-05.) Thereafter, Willis requested a hearing before an administrative law judge, ("ALJ"). (R. at 225.) A hearing was held on May 25, 2004, at which Willis was represented by counsel. (R. at 417-33.)

By decision dated June 24, 2004, the ALJ denied Willis's claims. (R. at 16-25.) The ALJ found that Willis met the disability insured status requirements of the Act for disability purposes through December 31, 2003. (R. at 24.) The ALJ found that Willis had not engaged in substantial gainful activity since his alleged onset of disability. (R. at 24.) The ALJ also found that Willis had severe impairments, namely right knee

---

[1] The record reflects that Willis filed applications for DIB and SSI in 1998, (R. at 41-44, 189-92), which were denied by an ALJ's opinion dated November 23, 1999. (R. at 202-13.)

and ankle pain and a history of left clavicle fracture, but he found that Willis did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) The ALJ further found that Willis's allegations regarding his limitations were not totally credible. (R. at 24.) The ALJ concluded that Willis had the residual functional capacity to perform substantially all of the full range of light work.[2] (R. at 24.) Based on Willis's age, education, past work experience and residual functional capacity and the Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that Willis could perform jobs existing in significant numbers in the national economy. (R. at 24.) Thus, the ALJ found that Willis was not under a disability as defined by the Act and was not eligible for benefits. (R. at 25.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

After the ALJ issued this decision, Willis pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 8-11.) Willis then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The case is before this court on Willis's motion for summary judgment filed May 20, 2005, and on the Commissioner's motion for summary judgment filed July 25, 2005.

*II. Facts and Analysis*

Willis was born in 1966, (R. at 226), which classifies him as a "younger

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2005).

person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2005). He has a high school education and past work experience as a heavy equipment operator. (R. at 243, 246-50, 420.)

At his hearing, Willis testified that he was involved in a motor vehicle accident in 1998 in which he sustained injuries to his knees, ankle and foot. (R. at 421.) Willis stated that he also was involved in an all-terrain vehicle accident in 2002 in which he fractured his left clavicle. (R. at 421-22.) Willis stated that he experienced pain in his knees and left shoulder on a daily basis. (R. at 422.) Willis also complained of pain from time to time in his lower back. (R. at 423.) Willis stated that he also experienced difficulty using his dominant right hand because of carpal tunnel syndrome. (R. at 423-24.) Willis estimated that he could stand or walk for only 20 to 25 minutes at a time and that he could sit for only 20 minutes at a time. (R. at 425.) Willis also complained of suffering from depression and panic attacks. (R. at 426.)

In rendering his decision, the ALJ reviewed records from Dickenson County School System; Dr. S.C. Kotay, M.D.; Dickenson County Medical Center; St. Mary's Hospital; Stone Mountain Health Services; Dr. Kevin Blackwell, D.O.; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Donald R. Williams, M.D., a state agency physician; R. J. Milan Jr., Ph.D., a state agency psychologist; Eugenie Hamiltion, Ph.D., a state agency psychologist; Dr. Patricia Vanover, M.D.; and Paula Meade, a family nurse practitioner. Willis's counsel also submitted additional medical records from Dr. James T. Barker II, M.D.[3]

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 8-11), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health &*

-4-

Case 2:04-cv-00111-PMS   Document 16   Filed 08/26/05   Page 4 of 13   Pageid#: 82

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 24, 2004, the ALJ denied Willis's claims. (R. at 16-25.) The ALJ found that Willis met the disability insured status requirements of the Act for disability purposes through December 31, 2003. (R. at 24.) The ALJ found that Willis

---

*Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

had not engaged in substantial gainful activity since his alleged onset of disability. (R. at 24.) The ALJ also found that Willis had severe impairments, namely right knee and ankle pain and a history of left clavicle fracture, but he found that Willis did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.)

The ALJ further found that Willis's allegations regarding his limitations were not totally credible. (R. at 24.) The ALJ concluded that Willis had the residual functional capacity to perform substantially all of the full range of light work. (R. at 24.) Based on Willis's age, education, past work experience and residual functional capacity and the Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that Willis could perform jobs existing in significant numbers in the national economy. (R. at 24.) Thus, the ALJ found that Willis was not under a disability as defined by the Act and was not eligible for benefits. (R. at 25.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

In his brief, Willis raises several arguments, all of which appear to rely upon his position that the ALJ erred in finding that he did not suffer from a severe mental impairment. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-15.) For the following reasons, I find that the ALJ's finding on this issue is not supported by substantial evidence.

Willis did not allege that he suffered from any mental impairment at the time that he filed either his 1998 applications or his current applications. (R. at 52, 237.) Willis was evaluated by B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, on October 15, 1999, on the request of his attorney in relation to his 1998 applications. (R. at 170-88.) Lanthorn found Willis to be alert and oriented. (R. at 171.) Lanthorn described Willis as depressed. (R. at 171.) Willis reported that he had custody of his two minor children. (R. at 172.) Lanthorn's notes state:

> . . . Willis describes a typical day for himself now as follows: 'Well, I get up and get the kids ready for school. I do a little housework. Sometimes

-7-

> I visit my friends a little bit. When the kids get home, I try to help them where I can; and I fix some supper. Then I get them ready for bed. I do try to do the laundry. I do whatever cooking needs to be done. I do go to the grocery store.'

(R. at 173.) Willis reported that he felt significant depression and anxiety. (R. at 173.) He stated that he had grown progressively more irritable and snappy with his children and that he preferred to be alone. (R. at 173.) He reported no problems with memory loss. (R. at 173.)

Lanthorn administered the Wechsler Adult Intelligence Scale - Third Edition, ("WAIS-III"), on which Willis's verbal IQ score was 81, his performance IQ score was 69 and his full-scale IQ score was 74, which placed him in the borderline range of intellectual functioning. (R. at 173.) Lanthorn diagnosed Willis with a mood disorder, with major depressive-like episode, and anxiety disorder. (R. at 175.) Lanthorn placed Willis's Global Assessment of Functioning, ("GAF"), score at 45-50.[4] (R. at 175.) Lanthorn recommended that Willis seek the services of his local mental health center or a private mental health professional. (R. at 176.)

Lanthorn completed a Psychiatric Review Technique form, ("PRTF"), on which he stated that Willis's condition met or equaled the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 and 12.06 for affective disorder and

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has serious symptoms or serious impairments in social, occupational or school functioning. *See* DSM-IV at 32.

anxiety related disorder. (R. at 177-85.) On the PRTF, Lanthorn stated that Willis suffered moderate restrictions of activities of daily living, often experienced deficiencies of concentration, persistence or pace and experienced marked difficulties in maintaining social functioning. (R. at 184.) Lanthorn also completed an assessment of Willis's mental work-related abilities on which he stated that Willis's abilities were seriously limited or worse in all areas other than performing simple job instructions. (R. at 186-88.)

The record reflects that Willis sought treatment from Stone Mountain Health Services on October 14, 2002, complaining of depression. (R. at 316.) Willis was seen by Paula Meade, F.N.P., and was prescribed Zoloft. (R. at 317.) On October 28, 2002, Willis reported feeling that his condition was much improved on Zoloft. (R. at 314.) On November 27, 2002, Willis reported feeling much better since starting Zoloft. (R. at 312.) Willis stated that he was less depressed and had more energy. (R. at 312.)

On January 28, 2003, Willis reported that his depression had improved on Zoloft, but that he was anxious. (R. at 308.) Willis also complained of being unable to sleep or concentrate. (R. at 308.) Willis reported increased anxiety and depression on April 24, 2003, however, Willis stated that he had been out of Zoloft for the past two weeks. (R. at 305-07.) Willis stated that he was receiving counseling at Dickenson County Social Services, which had helped. (R. at 305.)

Willis continued to treat with Meade through at least March 29, 2004. (R. at 372-73.) On October 16, 2003, Willis complained of continued depression and

anxiety, with difficulty with his concentration and short-term memory. (R. at 383.) Willis also reported becoming nervous and agitated out in public places. (R. at 383.) On December 17, 2003, Meade stated that she was going to attempt to arrange a psychiatric consult. (R. at 379.) On March 29, 2004, Willis reported becoming very anxious at times and being unable to concentrate. (R. at 372.) Willis also reported difficulty with his short-term memory. (R. at 372.)

On June 12, 2003, R. J. Milan Jr., Ph.D., a state agency psychologist, completed a PRTF. (R. at 345-59.) Milan stated that the evidence showed that Willis suffered from borderline intellectual functioning which needed further evaluation. (R. at 345-46.) Milan also completed an assessment of Willis's mental work-related abilities on which he stated that Willis was moderately limited in his ability to understand, remember and carry out detailed instructions. (R. at 334-44.) Milan stated that Willis could understand, remember and carry out simple one-to-two step work tasks. (R. at 344.) Milan's PRTF and assessment were reviewed and affirmed by Eugenie Hamilton, Ph.D., another state agency psychologist, on September 22, 2003. (R. at 344, 345.)

Sometime prior to October 31, 2003, Willis started counseling with Crystal Burke, a licensed clinical social worker, with Stone Mountain Health Services. (R. at 382.) Willis reported that he was sometimes easily agitated and was socially isolated. (R. at 382.) On December 9, 2003, Burke reported that Willis continued to exhibit some symptoms of anxiety and depression. (R. at 380.) Burke's March 2, 2004, note reflects that, as a result of a psychiatric consult, Willis's Zoloft was discontinued and he was prescribe Effexor. (R. at 375.) One of Meade's medical reports, however,

suggest that Willis was having difficulty obtaining this medication. (R at 372.) Willis continued to see Burke through at least April 13, 2004. (R. at 370.)

On January 8, 2004, Burke completed an assessment of Willis's mental work-related abilities and stated that Willis possessed a seriously limited or no useful ability to perform in all categories. (R. at 365-67.) Burke stated that Willis suffered from significant symptoms of anxiety and depression. (R. at 365.)

On March 1, 2004, Willis was evaluated by Dr. James T. Barker II, M.D., a psychiatrist with the University of Virginia Health Services. (R. at 406-09.) Dr. Barker noted that Willis complained of a one-year history of depression. (R. at 406.) Willis also complained of diminished concentration, focus, decreased attention and difficulty with short-term memory. (R. at 406.) Dr. Barker diagnosed Willis with major depression, recurrent, moderate to severe, partially treated, with no psychosis. (R. at 409.) Dr. Barker placed Willis's GAF at 50 to 55.[5] (R. at 409.)

The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2005). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b),

---

[5]A GAF of 51-60 indicates that "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-11-

416.921(b) (2005). The Fourth Circuit held in *Evans v. Heckler*, that """[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.""" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

In this case, every medical and mental health source who has examined or evaluated Willis has stated that he has a mental impairment. Lanthorn diagnosed Willis with borderline intellectual functioning, mood disorder and anxiety disorder. Meade diagnosed Willis with anxiety and depression. Burke diagnosed anxiety and depression. Dr. Barker diagnosed major depression. Both Lanthorn and Burke have provided assessments stating that Willis's mental impairment affects his work-related abilities. Even the state agency psychologists who reviewed the record stated that Willis suffered from a mental impairment that affected his work-related abilities, in that he suffered from borderline intellectual functioning. That being the case, I find that substantial evidence does not exist in this record to support the ALJ's finding that Willis did not suffer from a severe mental impairment. "In the absence of any psychiatric or psychological evidence to support his position, the ALJ simply does not possess the competency to substitute his views on the severity of plaintiff's psychiatric problems for that of a trained professional." *Grimmet v. Heckler*, 607 F. Supp. 502, 503 (S.D. W. Va. 1985) (citing *McLain*, 715 F.2d at 869; *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)).

*III. Conclusion*

For the foregoing reasons, the plaintiff's and the Commissioner's motions for summary judgment will be denied, the Commissioner's decision denying benefits will be vacated, and this case will be remanded to the Commissioner for further consideration of Willis's mental impairments and their impact on his work-related abilities.

An appropriate order will be entered.

DATED: This 26th day of August, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-13-